***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner DeLuca.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named.
4. The employee's average weekly wage is $320.00 per week.
5. The employee sustained an injury on or about May 23, 2006.
6. The injury arose out of and in the course of employment and is compensable.
7. Plaintiff is entitled to receive the sequential drug trial recommended by Dr. Pecoraro during his deposition and defendants will immediately authorize and pay for said treatment.
8. The only issue for determination by the undersigned is the issue of indemnity benefits, as the parties have reached an agreement regarding the Plaintiff's medical treatment.
9. Stipulated Exhibits 1 and 2 have been entered into the record.
 ***********
The competent evidence of record and reasonable inferences flowing therefrom engenders the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner the Plaintiff was 33 years old. Plaintiff dropped out of school in the ninth grade. He later attended James Sprunt Community College and took GED courses; however, he did not obtain his GED.
2. Plaintiff began working for a roofing company after he quit school. He then worked for two different auto parts stores as a salesman for approximately five years. Plaintiff then worked as a manager for Kentucky Fried Chicken and Taco Bell, Inc. The position did not *Page 3 
require additional education but he was required to take a three-month training course. He was employed as a manager for roughly five years.
3. Plaintiff began working for the Employer-Defendant in 2005, as an assembler/mechanic. He assembled scooters, motorcycles, jet skis, ATV's and other off-road equipment. Plaintiff described the assembly phase of the job as "quite easy" without much lifting. The hardest job function was loading the motorcycles onto the truck for shipment after they were assembled.
4. On May 23, 2006, Plaintiff was loading a truck with a coworker. In this process, the coworker held the handlebars of the motorcycle steady while Plaintiff adjusted the bike around to the back. On the day in question, the coworker leaned on the handlebars to help adjust the bike which added extra weight to it. Plaintiff lifted the bike to adjust it at the same time his coworker leaned on the handlebars. He felt an immediate pull in his back. He then reported the injury to Eric Howarth, his supervisor.
5. Defendants accepted Plaintiff's clam for injury pursuant to a Form 60 and paid benefits, including temporary total disability benefits.
6. Plaintiff sought treatment at Pender Memorial Hospital on the day of the injury with complaints of low back pain and left leg numbness. A CT scan of the lumbar spine revealed bilateral pars defects at both L4 and L5. He was diagnosed with low back pain with radiculopathy and referred to Atlantic Orthopaedics for follow up.
7. Plaintiff returned to Pender Memorial the following day with worsening pain. An MRI was performed and the results again showed bilateral pars defect at both L4 and L5. There was also mild foraminal narrowing bilaterally at L4-L5. *Page 4 
8. On June 1, 2006, Plaintiff was evaluated at Carolina Coast Primary Medicine. He was referred to a neurologist for his worsening back pain.
9. Dr. Ballenger of Coastal Neurological Associates examined Plaintiff on July 3, 2006 and recommended an EMG/NCVs to determine the source of Plaintiff's pain. Upon review of the electrodiagnostic studies on September 30, 2006, Dr. Ballenger noted that the EMG revealed evidence of denervation, but based on the MRI results, he felt the pain to be mechanical in nature. Dr. Ballenger referred Plaintiff to a chiropractor.
10. Plaintiff was evaluated by Dr. Rodger at Atlantic Orthopaedics on November 21, 2006. Dr. Rodger did not see any surgical lesions on the MRI and referred Plaintiff to Dr. Pecoraro, a physiatrist with Atlantic Orthopaedics.
11. Dr. Pecoraro's initial evaluation occurred on January 23, 2007. Dr. Pecoraro noted Plaintiff reliably localized his pain to the L5-S1 level. He recommended an epidural steroid injection followed by a course of physical therapy. Plaintiff did not get any relief from the injection, and Dr. Pecoraro started Plaintiff on a trial of pain medications.
12. During his treatment with Dr. Pecoraro, Plaintiff was also treating with Penny Lockerman, R.N. for diabetes. He was required to visit once every thirty days to check his hemoglobin. He would make his next appointment when he went back for his check up so that his employer would have thirty days notice before the next appointment.
13. In May, 2007, Plaintiff underwent bilateral pars injections at the direction of Dr. Pecoraro. These injections did not alleviate the pain or increase function. Dr. Pecoraro continued to manage Plaintiff's pain with medication.
14. A CT myelogram was performed at the request of Dr. Rodger in July, 2007. No surgical lesions were indicated. *Page 5 
15. Plaintiff was kept out of work by his doctors during the first part of his medical treatment. In August, 2007, he asked to be released to perform some work to avoid loss of his home. Dr. Pecoraro released Plaintiff to return to work as of August 14, 2007, with restrictions consistent with light-duty. Dr. Pecoraro released Plaintiff at maximum medical improvement and assigned a five percent permanent partial disability rating and light-duty restrictions on August 28, 2007.
16. Plaintiff returned to work at Coastal Assembly. He was assigned to washing motorcycles, trucks and trailers, cleaning restrooms, sweeping floors, and picking up trash outside of the dumpster.
17. Plaintiff had difficulty with some of his light-duty tasks, and it created tension between himself and the employer, Eric Howarth. Plaintiff's diabetic condition had also deteriorated throughout this time, causing Plaintiff to miss more work, and it exacerbated his depressive condition.
18. Plaintiff returned to Dr. Pecoraro on October 19, 2007. Dr. Pecoraro prescribed OxyContin twice a day and wrote another note indicating Plaintiff could work as a motorcycle assembler/mechanic. This note was written in response to his complaints about light duty work he was performing for the employer. There were several activities that aggravated his back pain while on light duty: the twisting motion while sweeping, having to get on the floor to wash motorcycles, bending down to scrub tires, climbing onto the backs of trucks, and picking up trash.
19. Both Plaintiff and Dr. Pecoraro testified they believe assembling motorcycles to be easier for Plaintiff than the light duty tasks he was assigned by the employer. *Page 6 
20. Despite Plaintiff's full-duty work release, he was not allowed to return to his previous position of motorcycle assembler.
21. Defendant proffered evidence that Plaintiff's general attitude and work ethic changed dramatically after being placed on light duty. Defendant contends that Plaintiff became insolent towards management and began excessively talking and disrupting fellow employees. One incident report dated October 24, 2007 was prepared regarding Plaintiff's conduct.
22. Plaintiff was scheduled for diabetes treatment on January 9, 2008. When he went to remind Mr. Howarth about the appointment, Mr. Howarth told him there was a large shipment going out the following day and he needed Plaintiff to stay and wash the motorcycles. Plaintiff stayed and worked that afternoon.
23. On the following day, Plaintiff left work at lunch time to go for his diabetes treatment. The medical care provider's schedule was late and Plaintiff was so delayed in keeping his appointment that he did not return to work that day.
24. When Plaintiff arrived at work on January 11, 2008 with a doctor's note for his appointment on January 10, 2008, Plaintiff had been written up by Howarth. He refused to sign the written warning and subsequently was fired by Howarth.
25. Defendant contends that Plaintiff did not return to work after the medical appointment and did not present a note from his physician explaining why Plaintiff did not return to his duties. Defendant contends that Plaintiff did not explain his failure to return but threatened that he would inform workers' compensation and unemployment. Howarth testified that he told Plaintiff he would be terminated if he refused to sign the written personnel action form.
26. The greater weight of the evidence compels a finding that Plaintiff was not fired for reasons that represent misconduct. The greater weight of the evidence establishes that *Page 7 
following his injury and return to light duty work, the relationship between the Plaintiff and his employer became strained and that Howarth sought justification to fire the Plaintiff.
27. Following his termination from Coastal Assembly, Plaintiff made a reasonable search for employment within the restrictions assigned by Dr. Pecoraro given the nature of his pain and pain medications.
28. Plaintiff continues to see Dr. Pecoraro and/or his PA once a month for medication refills. In April of 2008, Dr. Pecoraro recommended a trial spinal cord stimulator to try and alleviate Plaintiff's pain. To date, this has not been authorized by the defendants.
29. Plaintiff remains out of work.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. Defendants, pursuant to N.C. Gen. Stat. § 97-18(b), filed a Form 60, "Employer's Admission of Employee's Right to Compensation," and initiated payments of temporary total disability compensation to Plaintiff. Under N.C. Gen. Stat. § 97-82(b), payment pursuant to N.C. Gen. Stat. § 97-18(b), or payment pursuant to N.C. Gen. Stat. § 97-18(d) when compensability and liability are not contested prior to expiration of the period for payment without prejudice, constitutes an award of the Commission on the question of compensability of and the insurer's liability for the injury for which payment was made. Compensation paid in these circumstances constitutes payment of compensation pursuant to an award under this Article. N.C. Gen. Stat. § 97-82(b) (2007). Thus, a defendant's payment of compensation pursuant to a Form 60 constitutes payment pursuant to an award of the Commission. "Payments of compensation pursuant to an award of the Commission shall continue until the terms of the award have been *Page 8 
fully satisfied." N.C. Gen. Stat. § 97-18.1(a) (2007). Once the payment of compensation under an award of the Commission has been commenced, payments can only be terminated under certain circumstances and after following specific procedures. "An employer may terminate payment of compensation for total disability . . . when the employee has returned to work for the same or a different employer . . . or when the employer contests a claim pursuant to N.C. Gen. Stat. § 97-18(d) within the time allowed thereunder." N.C. Gen. Stat. § 97-18.1(b) (2007). In the present case, Defendants' filing of a Form 60 and payment of temporary total disability benefits beyond the period of contesting Plaintiff's claim operated as an award of the Industrial Commission as to disability benefits. Fonville v. General MotorsCorp., ___ N.C. App. ___, 683 S.E.2d 445 (2009).
2. When an employee who has sustained a compensable injury and has been provided light duty or rehabilitative employment, has been terminated, such termination does not automaticallyconstitute a constructive refusal to accept employment so as to bar the employee from receiving benefits for temporary partial or total disability. The employer must first show that the employee was terminated for misconduct or fault unrelated to the compensable injury for which a non-disabled employee would ordinarily have been terminated. The test is whether the employee's loss of, or diminution in, wages is attributed to the wrongful act resulting in loss of employment, in which case the employee will be entitled to benefits for such disability. In the present case the Defendant has failed to prove by the greater weight of the evidence that Plaintiff was terminated for fault unrelated to Plaintiff's compensable injury. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).
3. Plaintiff has remained out of work since January 11, 2009 and has been unable to find suitable employment within his physical restrictions. Plaintiff is entitled to temporary total *Page 9 
disability from the time of his termination and continuing until further orders of the Industrial Commission. N.C. Gen. Stat. § 97-2(9).
 ***********
The foregoing Stipulations, Findings of Fact and Conclusions of Law engender the following:
 AWARD
1. Defendant shall pay Plaintiff temporary total disability benefits from January 11, 2008 and continuing until further order of the Commission at the compensation rate of $213.67 per week. The past due amount to the date of this Award shall be paid in one lump sum. Future disability benefits shall be paid weekly. Both the past due and future disability benefit payments are subject to an attorney's fee contained in Paragraph 2 below.
2. Plaintiff shall pay a reasonable attorney's fee of 25% of the disability benefits approved in this Award. From past due benefits, Defendants shall deduct the attorney fee approved and pay the same directly to Plaintiff's counsel in lump sum. From future benefits, Defendants shall deduct every fourth check due to the plaintiff and pay the same directly to plaintiff's counsel.
3. Defendants shall bear the costs. Defendants shall pay an expert witness fee of $225.00 for Ms. Lockerman if not already paid.
This the ___ day of November, 2009.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG CHAIR
 S/_______________ BERNADINE S. BALLANCE COMMISSIONER